## MARY A. ADAMS, Admx.

### *v.*

### JOSHUA R. GORDON.

*Filed at Ottawa May 14, 1881.*

PARTNERSHIP—*as to ownership of capital stock.* Where a partnership was formed with a nominal capital stock of $20,000, and the articles of copartnership provided that the parties should share equally in all stock and all profits and losses that might accrue, and that on final settlement whatever should remain, either in money, goods, wares, fixtures, debts, or otherwise, should be equally divided between them, and it further appeared, that during the continuance of the partnership, a period of five years, neither partner was credited with any excess of capital stock, or any charge made to the other, each partner having free access to the books, and no complaint having been made in this respect, it was *held*, on bill for a partnership account by the personal representative of a deceased partner, that no decree could be rendered against the surviving partner for one-half or any portion of the original capital stock.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit

Court of Knox county ; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WILLIAMS & LAWRENCE, and Mr. L. DOUGLASS, for the plaintiff in error.

Messrs. LANPHERE & BROWN, for the defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court :

James A. Bundy, since deceased, and Joshua R. Gordon, were partners, carrying on the business of wholesale and retail clothiers and merchant tailors, under a written agreement bearing date March 4, 1869. By the terms of the agreement, the partnership was to continue for one year, but the agreement was four times renewed by the parties, in writing, so that, in fact, the partnership originally formed continued through a period of five years. On the 4th of March, 1874, the co-partnership was dissolved, and after the death of James A. Bundy, which occurred July 25, 1875, this bill was filed by his administratrix, Mary A. Bundy, since intermarried with Frank Adams, against Joshua R. Gordon, the surviving partner, for a settlement of the affairs of the partnership. After an issue was formed on the answer of defendant, by the filing of a replication, the cause was referred to the master, and on the consideration of the exceptions to the master's report, filed by both parties, and the testimony introduced, the court found there was due from defendant to complainant, as such administratrix, in the settlement of such partnership, the sum of $813.62, and adjudged defendant should pay the same to complainant within thirty days from the date of filing such decree, with interest at the rate of six per cent per annum, together with the costs of suit. That decree was affirmed in the Appellate Court, and complainant brings the case to this court on error.

It was stipulated by counsel, the only question to be tried, either in the Appellate Court or in the Supreme Court, is whether "complainant was entitled to a decree for the capital stock put into the firm of J. R. Gordon." Other matters alleged in the bill are not now matters of contention between the parties. It will be observed, the stipulation as to the question to be tried is silent as to who paid into the firm the "capital stock," which is the subject of litigation. That is to be ascertained from the evidence in the case. On this question, undoubtedly the most reliable evidence is the co-partnership agreement, having attached thereto the signatures of both parties. That agreement declares, the parties have agreed to become co-partners in "the business of whole-sale and retail clothiers and merchant tailors," such co-partnership to commence on the 4th day of March, 1869, and to continue one year then next ensuing, "and to that end and purpose the said J. R. Gordon and J. A. Bundy have delivered in as capital stock the sum of $20,000." It is then stated of what the capital stock consisted, viz: moneys, notes, accounts and goods, and it is added: "the said J. A. Bundy putting in all notes and accounts that have accrued in his business for the last five years as clothier and merchant tailor, still unpaid, as a *part* of the capital stock." Concerning the interest of each partner in the stock and profits of the concern and the management of the business, it was provided: "It is agreed between the parties that they shall share equally in stock and all profits and losses that may accrue in their business during the continuance of their co-partnership, and also that they shall and will, at all times during the co-partnership, bear, pay and discharge, equally between them, all expenses that may be, the said Bundy to furnish the store rent free, and pay the wages of one clerk, as an offset to the services of said Gordon, required in the management of their business; and it is agreed by and between the parties, that there shall be had and kept, all times during the continuance of their co-partnership, perfect, just

and true books of account, wherein each of the said co-part-
ners shall enter and set down all moneys that may be used by
them in their own private accounts or in the management of
their business, which said books shall be used in common
between the said co-partners, so that either of them may
have access thereto without any interruption or hindrance
of the other; and at the end, or other sooner termination of
the co-partnership, the said co-partners, each to the other,
shall and will make a true and final account of all things
relating to their said business, as well as the gains and
increase thereof, which shall appear to be remaining, either
in money, goods, wares, fixtures, debts, or otherwise, shall
be divided between them, and have and share alike."

Construction could not make the co-partnership agree-
ment plainer than the literal reading. It contains nothing
that is ambiguous. It is declared, the partners " have deliv-
ered in as capital stock the sum of $20,000," and it is then
so clearly stated there can be no misunderstanding, the
parties "shall share equally in stock and all profits and
losses that may accrue in their business during the continu-
ance of their co-partnership," and when the final account of
all things relating to the business, as well as the gains and
increase thereof, shall be taken, and of whatever shall
"appear to be remaining, either in money, goods, wares, fix-
tures, debts, or otherwise, shall be divided between them, and
have and share alike." Here is an agreement, definitely
expressed in unambiguous terms, for an equal partnership,
with a paid in capital of $20,000, in which each partner is
to share equally, both in the stock and the profits that may
be realized, and in which each partner is to sustain an equal
burden of any losses that may be sustained. The context is
entirely consistent with this construction of the contract. No
allusion is made to the fact one partner may have advanced
more of the capital stock than the other, and in the provision
made for final settlement of all accounts at the end or sooner
termination of the co-partnership, or at any other time,

neither partner is required to account to the other for any excess of capital stock advanced.

There is no evidence that even tends to show the partners were not equal owners of the sum "delivered in" as capital stock. One partner was dead, and by reason of his death, under our laws, the other could not testify in his own behalf, and there is no witness who pretends to state the agreement as to capital stock and the amount paid in was different from what it is stated to be in the articles of co-partnership. The answer of defendant was not required to be made under oath, and, under the practice that prevails in chancery, it is not evidence. But if it is to be treated as an admission against him, there is nothing in it inconsistent with the construction given to the partnership contract. Conforming to the co-partnership agreement, defendant states the capital stock consisted largely of notes, accounts and goods that had belonged to his partner in the previous business conducted by him as clothier and merchant tailor, and had accumulated and accrued in that business in previous years. Nominally the capital stock was $20,000, but in fact the cash value was much less. Defendant was the son-in-law of his now deceased partner, and had been in his employ in the business conducted by him, for five years previous to forming a partnership with him. He had, during that period, entire charge of the business, at a small salary, and in consideration he would take entire charge of the new business about to be commenced, he would give him an equal interest in what was denominated capital stock. Much of the time Mr. Bundy was afflicted with chronic diseases that ultimately caused his death, and no doubt he desired to be relieved from all care as to the management of the business. It was for that reason, defendant says, he made him the offer that was accepted. The admission of defendant, the capital stock, which we have seen consisted of goods, notes and accounts that had belonged to deceased, must be considered with the explanation given by him as to

the terms on which they were delivered into the firm as stock, and in which the partners were to share equally.

As assisting to a clearer view of what the parties themselves understood respecting their interest in the capital stock, as expressed in the co-partnership contract, reference may be had to the conduct of the partners, about which there can be no ground for misapprehension. No credit was ever given to deceased on the books of the firm for any excess of capital stock. He had constant access to the books, and made frequent examinations of them, but it does not appear any complaint was made as to the omission to give such credit. Two partial settlements were made between the partners,—one in 1870, and the other in 1871,—and yet no claim was made, on either occasion, by deceased, that he was entitled to a credit for an excess of capital stock. In 1874, after the firm was dissolved, a settlement was made, which, no doubt, was intended by both partners to be a full and final settlement of all partnership affairs; but whether it was or not, or whether it was fairly made, are not material questions, as the case comes to this court under the stipulation in the record as to the question to be tried. In the making of that settlement, deceased was assisted by Mr. Davis, who was selected because of his skill as an accountant. The investigation into the partnership accounts lasted many days, and Mr. Davis devoted to it faithful services. During all the time it was going on deceased was in feeble health, but he was often at the store, and frequently advised with Mr. Davis concerning the settlement, and the manner of making it. He asked his assistant to go back two or three years and run over the footings, to see if they were correct, and said the accounts were all right, but there might be some mistake in the footings, or words to that effect. This would indicate, unmistakably, that he had carefully examined the items of the accounts, and was satisfied.

During all the time the investigation of the partnership affairs was being made, deceased seems to have had a clear

understanding of what was being done, and how it was done. It appears he advised with Mr. Ekins, in whom he seems to have reposed great confidence as a friend and an accountant, both before and after it was made. He had desired to have his services to assist him in making the settlement, but consented that Mr. Davis might do it. In none of his conversations with Davis or Ekins, either before, or after the settlement, when he knew the result reached, did he ever claim or intimate that he ought to have been credited with an excess of capital advanced to the firm. Mr. Ekins says, that at that time the mind of deceased was " very clear," and he was " capable of knowing fully if he had his rights." If the theory on which the bill was framed, that deceased owned the entire capital stock of the firm when it was organized, and defendant was to account for one-half of it at the end or sooner termination of the co-partnership, is the true one, it is very strange he never asserted that claim in any of his conversations with Davis or Ekins. The subject on his mind was the final settlement of all partnership affairs, and if such a claim in fact existed, it certainly would have been insisted upon by him in some of his conversations with his confidential advisers, but no mention is made of such a claim to either of them.

There is nothing in this record that would warrant a decree against defendant for one-half or any portion of the capital stock on which the firm commenced business, and the decrees of the lower courts approving of the report of the master, finding against the claim of complainant for any part of the capital stock put into the firm by deceased, were clearly right, and must be affirmed.

*Judgment affirmed.*